Shaul v. Mann.

------

ALMA SHAUL ET AL., APPELLANTS, v. ROBERT D. MANN ET AL., APPELLEES.

FILED MARCH 1, 1918.   No. 19575.

1. Appeal: FINDINGS: PRESUMPTIONS.  In an action tried to the court without a jury, it will be presumed on appeal that the court only considered competent evidence in its findings and judgment.

2. ------: ------: EVIDENCE.  Where the competent evidence in a case so tried is sufficient to sustain the findings and judgment, the admission of incompetent evidence will not ordinarily constitute grounds for a reversal.

3. Vendor's Lien: SUFFICIENCY OF EVIDENCE.  The evidence examined, its substance stated in the opinion, and held sufficient to sustain the judgment of the district court.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*O. B. Clark* and *A. B. Tollefson,* for appellants.

*Fred A. Nye, contra.*

HAMER, J.

This is an appeal from the judgment of the district court for Buffalo county. The case is an action on a contract for the sale of real estate, to declare a lien in favor of the heirs of the vendor, and to foreclose the same.

It appears that in March, 1908, when Joseph O. Newman was the owner of lot 2 in the southwest quarter of the school section addition to Kearney Junction and on the 16th day of that month, he sold the same to Robert D. Mann for the sum of $2,700, of which $1,000 was to be paid in cash, and the remainder of $1,700 was to be paid on or before the 16th day of September, 1908. A written contract was entered into between the parties which, together with a warranty deed of the premises from Newman to Mann, was placed with the City National Bank of Kearney under an agreement that the deed should be delivered to Mann upon his payment of $1,700 (the remainder of the purchase price) to Newman on or before the 16th day of September, 1908. The bank accepted the trust and agreed to carry out the same. It further appears that Joseph O. Newman died in March, 1909, in Lincoln county, where he resided, leaving the plaintiffs herein as sole surviving heirs. Newman's estate was administered in Lincoln county. All of his debts were paid, and the administrator was discharged. It further appears that the plaintiffs had no knowledge at that time of the execution of the contract and deed above mentioned, and, when they afterwards learned that the deed and contract were in the hands of the bank, they brought this suit against Robert D. Mann and the bank; the latter of which had refused to deliver the deed and contract to them.

The bank by its answer admitted the making of the
contract, and the execution of the deed by Newman,
and the placing of the same in the bank, with in-
structions to hold the deed and deliver the same to
Mann upon the payment of $1,700 to Newman on or
before September 16, 1908, and that it agreed to carry
out the terms of said instructions. For further answer
the bank alleged that it was informed by Newman on
or about the 16th day of September, 1908, that Mann
had paid him the remainder due him on the contract;
that thereupon the bank marked across the envelope
containing the contract and deed the word "Paid,"
and that ever since that time it had held the deed
and contract for the use and benefit of defendant
Robert D. Mann. Mann by his answer admitted the
same facts admitted by the answer of the bank, and
also alleged that he had paid the full consideration
mentioned in the contract to Joseph O. Newman at or
about the time it became due, and that the bank now
held the deed and contract for his use and benefit.

Plaintiffs by their reply denied the new matter con-
tained in defendants' answer. On the trial of the
issues the district court found generally for the defend-
ants and dismissed the action, and the plaintiffs have
appealed.

Appellants' first contention is that the judgment is
not sustained by the evidence. It appears from an
examination of the record that Joseph O. Newman lived
in Kearney from March, 1908, until some time in October
of that year; that September 24 he had a stroke of
paralysis, and some little time afterwards he moved
to Lincoln county, where he died in March, 1909. Plain-
tiffs' witnesses testified that no suit was ever brought
on the contract in question prior to the present one.
The cashier of the defendant bank testified that he
had been connected with the bank for more than ten
years; that in 1910 he found the contract and deed in
an envelope among the bank's papers; that he had no

personal knowledge as to the payment of the $1,700 mentioned in the contract.

John A. Miller, who was called as a witness for plaintiffs and also for defendants, testified that he was cashier of the bank from September, 1899, to September, 1909; that the indorsement on the envelope containing the contract and deed "Paid by Mann" is in his (Miller's) own handwriting, but he did not recall when it was made; that the indorsement "Paid by Mann" was not made at the direction of Mr. Mann; that he (Miller) was transacting business for the bank at the time he made the indorsement.

Several witnesses testified that defendant Mann was prompt in the payment of his obligations, but was careless in taking care of his deeds, mortgages and other papers. It appears from the testimony that defendant Mann had been residing on the property in question ever since he purchased it in 1908. It further appears that the papers were prepared by Walter Barney, who conducted an abstracter's office in Kearney, and that the contract was signed in his office; that Barney figured up the amount due on the contract, and that Mann wrote and signed a check to Newman for that amount. Defendant Mann testified over plaintiffs' objections that he saw Newman in Barney's office and gave him a check for the $1,700 due on the contract, and that he afterwards found it among his paid checks returned to him by the bank; that Mary C. Horton was present when he found the check and saw it, her attention being called to it; that he had lost the deed and contract, but thought it was in Barney's office; that he had the habit of leaving his papers with attorneys and banks.

Mary C. Horton testified that she saw the paid check for $1,700 drawn to Joseph O. Newman; that Mr. Mann took this check and others and put them in an envelope; that the check was signed by Robert D. Mann.

The bank account of defendant Mann was produced by an officer of the defendant bank, and was properly

identified and introduced in evidence. The account showed, among other things, that on September 14, 1908, Mann had in the defendant bank $4,950.51 subject to check; that on September 18, 1908, there was checked out the sum of $1,765.65; that the said checks, with others, reduced the account to $558.70 by Sept. 19, 1908.

T. W. Moss testified that he was engaged in the insurance business in the city of Kearney for several years; that Joseph O. Newman came to his office, and at his request witness wrote the consent of the insurance company transferring the policy of insurance on the premises in question to Robert D. Mann; that Mr. Newman said he wanted the policy transferred to Mr. Mann, that he had sold the property to him without any reservation; that this occurred some time in September, 1908.

It is contended that Mann was not a competent witness in this case because he was interested in the result of the trial and the plaintiffs were the representatives of the estate of Joseph O. Newman, deceased.

It may be conceded that defendant Mann was not a competent witness, and his testimony may be rejected, and yet, as we view the record, there was sufficient competent evidence to sustain the judgment of the trial court. Certainly the officers of the bank which held the deed and contract were not interested in the result of the trial. Neither did T. W. Moss nor Mary C. Horton have any interest in the controversy so far as we can see. We find that the evidence is sufficient to sustain the judgment. The admission of the testimony of the defendant Mann, while it may have been erroneous, was error without prejudice, for it has long been settled by the decisions of this court that in the trial of a case to the court without a jury it will be presumed that the court only considered the evidence which was competent. *McConahey v. McConahey*, 21 Neb. 463; *Dewey v. Allgire*, 37 Neb. 6; *Monroe v. Reid, Murdock & Co.*, 46 Neb. 316.

In *Dewey v. Allgire, supra,* this court held: "A judgment in a case tried without a jury will not be disturbed because of the admission of immaterial testimony, where the testimony properly admitted justifies the finding."

In *Monroe v. Reid, Murdock & Co., supra,* this court held: "In trials of fact to the court without the intervention of a jury, if sufficient competent evidence is admitted to sustain the findings of the court, the case will not be reversed on the ground of the admission of immaterial and incompetent evidence."

It has also been frequently decided that, where there is sufficient competent evidence to sustain a finding in a case tried by the court without a jury, the admission of incompetent evidence is not a sufficient ground for a reversal of the judgment. *Richardson v. Doty,* 25 Neb. 420; *Blondel v. Bolander,* 80 Neb. 531; *Citizens Ins. Co. v. Herpolsheimer,* 77 Neb. 232.

In *Richardson v. Doty, supra,* this court held: "When a cause is tried to the court without the intervention of a jury, the judgment will not be reversed on the ground of the admission of immaterial or incompetent evidence, if sufficient material and competent evidence was introduced and admitted to sustain the finding of the court."

In *Blondel v. Bolander, supra,* this court held: "In a case tried to a court without a jury, the admission of improper evidence is not in itself ground for reversal; and, where this court finds it unnecessary to consider the evidence to which objection is made, it will not review the question raised by the objection to such evidence."

In *Citizens Ins. Co. v. Herpolsheimer, supra,* this court held: "In a case tried to the court, the presumption obtains that the court, in arriving at a decision, will consider such evidence only as is competent and relevant, and this court will not reverse a case so tried because other evidence was admitted."

After a careful examination of the record, we are persuaded that plaintiffs had a fair trial, and that the district court committed no reversible error. The evidence sustains the findings of the district court, and the judgment is

AFFIRMED.

SEDGWICK, J., not sitting.