MATTER OF C——R——

In DEPORTATION Proceedings

A-5751606

*Decided by Board June 25, 1958*

Conviction of crime—Conviction in civil proceedings for theft under city ordinance is conviction of crime within section 241(a)(4)—Pardon by mayor of first-class city in Nebraska is effective pardon within section 241(b) when conviction was under city ordinance.

(1) Conviction in Police Court under Scottsbluff [Nebraska] City Ordinance for theft under $35 is a conviction for "crime" within meaning of section 241(a)(4) of the 1952 act notwithstanding that Nebraska courts view prosecution for violation of city ordinance as a *civil* proceeding.

(2) Full and unconditional pardon granted respondent by Mayor of Scottsbluff for above offense is an effective pardon within meaning of section 241(b) of the act since Nebraska law designates mayor of first-class city as supreme pardoning authority in regard to conviction under city ordinance. (Cf. *Matter of D*——, A-7940390, 7 I. & N. Dec. 476.)

CHARGES:

Order:  Act of 1952—Section 241(a)(4)  (8 U.S.C. 1251(a)(4))—Convicted for two crimes involving moral turpitude.

Lodged:  Act of 1952—Section 241(a)(1)  (8 U.S.C. 1251(a)(1))—No visa or passport—Sections 13(a), Act of May 26, 1924 (8 U.S.C. 213(a), 1946 ed.).

**BEFORE THE BOARD**

**Discussion:** An order entered by the special inquiry officer on December 3, 1957, suspends the deportation of the respondent herein under the provisions of section 244(a)(1) of the Immigration and Nationality Act (8 U.S.C. 1254(a)(1)). The Acting Regional Commissioner for the Northwest Region has certified the case to this Board for a review of the finding that the respondent is not deportable as a criminal alien under section 241(a)(4) of the Immigration and Nationality Act (8 U.S.C. 1251(a)(4)), as well as the finding that the exercise of discretion is warranted under the circumstances. He seeks a remand of the case for proper development of the record. A memorandum of law and argument has been submitted by the examining officer.

The respondent, a native and national of Mexico, male, married, 43 years of age, last entered the United States through the port of

59

Laredo, Texas, during the year 1933. The respondent originally entered the United States when he was less than one year of age (1915). When he was approximately 15 years of age his parents took him to Mexico where he resided until his last entry in 1933. The evidence of record affirmatively establishes deportability on the documentary charge lodged under section 241(a)(1) of the Immigration and Nationality Act (8 U.S.C. 1251(a)(1)) and no exceptions have been taken thereto.

The order to show cause charges that the respondent is subject to deportation under section 241(a)(4) of the Immigration and Nationality Act in that after entry he has been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. The respondent admits that he was convicted in the United States District Court for the Western District of Missouri on May 6, 1939, for violation of section 3 of the National Motor Vehicle Theft Act, transporting a stolen automobile in interstate commerce. It is well established that section 3 of the National Motor Vehicle Theft Act defines a crime involving moral turpitude.[1] The respondent also admits that he was convicted in the Police Court of the City of Scottsbluff, Nebraska, on June 24, 1956, for theft of property valued at less than $35.00 contrary to an ordinance of that city.[2]

The special inquiry officer finds that in the State of Nebraska an offense prosecuted in a police court under a municipal ordinance does not amount to a conviction of a crime within the meaning of section 241(a)(4) of the Immigration and Nationality Act. His finding is supported by two cases[3] in which the Supreme Court of Nebraska

---

[1] *Matter of B——*, 55856/94, B.I.A., Dec. 31, 1943; *Matter of G——*, 56158/89, B.I.A., Mar. 24, 1944; *Matter of S——*, A-2033407, B.I.A., July 8, 1949; *Matter of A——*, A-3027293, B.I.A., July 13, 1946 (unreported cases).

[2] Ordinance No. 458 of the City of Scottsbluff, Nebraska, sections 63 and 69 provide as follows:

*Section 63.* It is hereby declared unlawful for any person within the corporate limits of this City to steal any money, goods or chattels of any kind whatever, and any person who shall within the said City steal property of any kind whatever, whether the same be wholly in money or wholly in property of some other character, or partly in money and partly in other property, of the value of less than thirty-five dollars ($35.00), shall be deemed and considered a thief, and guilty of a misdemeanor.

*Section 69.* Any person, persons, firm, company or corporation, who shall be convicted of violating any of the provisions of the thirteen preceding Sections of this Chapter, for which penalty is not therein provided, shall, upon conviction thereof, be fined in any sum not less than One ($1.00) Dollar nor more than One Hundred ($100.00) Dollars, and, in default of payment thereof shall be adjudged to stand committed to the City Jail until said fine and costs of prosecution are paid, secured or otherwise discharged according to law.

[3] *State v. Neimer*, 147 Neb. 284, 23 N.W. 2d 81 (1946); *State v. Hauser*, 137 Neb. 138, 288 N.W. 518 (1939).

held that a prosecution for violation of a city ordinance, while in the form of a criminal prosecution, is, in fact, a civil proceeding to recover a penalty and a preponderance of the evidence is all that is required to sustain a conviction.[4] He concludes that the criminal charge laid under section 241(a)(4) is not sustained as a matter of law.

We do not concur. Here we are concerned with interpreting a Federal statute in which Congress has expressed its disapproval of the type of behavior for which the respondent was convicted under a city ordinance in the State of Nebraska. The fact that the misconduct is considered a civil proceeding by the courts of that state does not control when interpreting the immigration laws. An act of Congress is not circumscribed by restrictive holdings of state courts defining the jurisdictional and procedural limits of inferior courts of criminal jurisdiction. *United States* v. *Flores-Rodriguez*, 237 F.2d 405, 409, and cases cited at page 410 (C.A. 2, 1956).

Since the respondent has been convicted of two crimes involving moral turpitude, we must decide whether a pardon granted by the Mayor of Scottsbluff, Nebraska, meets the requirement of section 241(b) of the Immigration and Nationality Act (8 U.S.C. 1251(b)) that it be granted by a governor of a state. The pardon entered as exhibit 6 is full and unconditional and was executed on June 18, 1957.

Section 13 of Article IV of the State Constitution of Nebraska vests the power to pardon "after conviction * * * for any offenses committed against the criminal laws of this state, except treason and cases of impeachment * * *" in the Governor, the Attorney General and the Secretary of State, to be known as the "Board of Pardons," with the Governor as chairman. The corporate and general powers delegated to first-class cities[5] by the Legislature is set forth in Chapter 16, Article II, of the Revised Statutes of Nebraska, 1943. Section 316 thereof reads as follows:

The mayor shall have power after conviction to remit fines and forfeitures, and to grant reprieves and pardons for all offenses arising under the ordinances of the city.

That portion of section 241(b) of the Immigration and Nationality Act limiting the grant of an effective pardon to the President of the United States or the governor of a state has been interpreted to include a pardon granted by a state which has statutory provision for executive pardons to be issued by other than the governor of

---

[4] It is urged by the Immigration Service that this rule applies only where the city ordinance does not embrace a violation of a criminal statute of the state. It is noted, however, that in both the *Neimer* and *Hauser* cases (*supra*, footnote 3) the offenses in question were criminal under the laws of the state.

[5] Scottsbluff, Nebraska, is a first-class city under the laws of the State of Nebraska.

the state (*Matter of D——*, A–7940390, 7 I. & N. Dec. 476, B.I.A., May 28, 1957).

The Immigration Service urges in substance that the Mayor of Scottsbluff, Nebraska, is not the supreme pardoning power with respect to the respondent's conviction since the offense of "petty larceny" as defined by the ordinance here under consideration is also made criminal by Chapter 28, section 512, Revised Statutes of Nebraska, 1943. It is the position of the Immigration Service, in other words, that although the Legislature has delegated authority to the mayor of a first-class city to pardon convictions obtained under city ordinances, nevertheless the Board of Pardons has coextensive jurisdiction where the ordinance also embraces a violation of a state criminal statute.

We do not agree with this interpretation nor do we find that the authority [6] cited by the examining officer supports his position. It is urged that the cited decisions separate city ordinances into two categories, namely, (1) offenses made criminal by state law, and (2) civil proceedings to recover a penalty.

The cited cases concern convictions for violations of city ordinances concerned with indecent conduct, maintaining a disorderly house and permitting manure to accumulate on the premises. The Supreme Court of Nebraska in each instance held that the prosecution was a civil and not a criminal proceeding and, therefore, the prosecution had to prove its case by only a preponderance of the evidence. The reference in the opinions to the fact that the violations were not made an offense by state law are dicta. We note that in the *Neimer* case (*supra*, footnote 6) the offense of maintaining a disorderly house is an offense made criminal by state law (section 28–910, keeper of a disorderly house guilty of a nuisance; section 28–917, offense made criminal). We also note that in the *Hauser* case (*supra*, footnote 3) the municipal ordinance there involved concerns operating a motor vehicle while intoxicated which is also an offense made criminal by state law. The Supreme Court in both instances disregarded any distinction between violations that are and those that are not made criminal by the law of the state.

We are here concerned with the issue of whether the substantive law of the State of Nebraska designates the mayor of a first-class city of that state as the supreme pardoning authority with regard to a conviction under an ordinance of his city. Since this issue requires an interpretation of the law of the State of Nebraska and not an act of Congress we must necessarily following the rulings of the Nebraska State courts. The precedent case on this subject is

---

[6] *State* v. *Neimer,* 147 Neb. 284, 23 N.W. 2d 81 (1946); *Wells* v. *State,* 42 N.W. 2d 363 (1950); *State* v. *Renensland,* 69 N.W. 2d 860 (1955); *State* v. *Warren,* 76 N.W. 2d 728 (1956).

*Ex parte Campion*, 112 N.W. 585, 79 Neb. 364, decided by the Supreme Court of Nebraska in 1907.

The relator, *Campion*, was convicted in a bastardy proceeding and in default of payment of maintenance and the giving of security he was committed to jail. The governor, who at that time was the supreme pardoning authority (now the Board of Pardons), forwarded a full and unconditional pardon of *Campion* to the sheriff who refused to recognize it on the ground that it was not issued under authority of law. The court ruled that a prosecution in bastardy proceedings, though criminal in nature, is a civil action for the recovery of a penalty which may be enforced by imprisonment and the governor has no authority under the state constitution [7] to remit a civil obligation. The court said, "Unless there has been a crime and conviction, the governor cannot interfere with a pardon" (p. 588).

The weight of authority in Nebraska is that a prosecution for violation of a city ordinance while in form a criminal prosecution, is in fact a civil proceeding to recover a penalty.[8] The Supreme Court of Nebraska has ruled [9] that under that portion of the state constitution which limits the governor's (Board of Pardons) power to issue pardons "after conviction * * * for any offense (crimes) committed against the criminal laws of this state," [10] there is no authority for the granting of a pardon in a civil proceeding, although criminal in nature. We conclude, therefore, that Chapter 16, Article 11, Section 316, of the Revised Statutes of Nebraska, 1943, designates the mayor of a first-class city in Nebraska as the supreme pardoning authority in the case of a conviction under a city ordinance of his municipality. Applying the principle enunciated in *Matter of D——, supra*, we find that the unconditional pardon granted the respondent under the legislative provision referred to above is an effective pardon within the meaning of section 241(b) of the Immigration and Nationality Act (8 U.S.C. 1251(b)). Accordingly, the respondent is not deportable on the criminal charge laid under section 241(a)(4) of the Immigration and Nationality Act.

The respondent is deportable on the documentary charge lodged during the hearing. The special inquiry officer has granted him suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act. The Acting Regional Commissioner maintains that the question of the respondent's character is not properly de-

---

[7] Article IV, section 13, Constitution of the State of Nebraska.

[8] *State* v. *Hauser*, 137 Neb. 138, 288 N.W. 518; *Foley* v. *State*, 60 N.W. 574; *State* v. *Novak*, 45 N.W. 2d 625.

[9] *Ex parte Campion, supra.*

[10] Article IV, section 13, Constitution of the State of Nebraska.

veloped in the record. We note that the respondent has an extensive arrest record for the period 1935 through 1954. We also note that the record does not contain a current report of a character investigation.

Under the circumstances we will defer final decision in the case and will remand for a reopened hearing on the issue of discretionary relief, the record to be fully developed with regard to allegations that the respondent is addicted to excessive drinking and has had relationships with persons other than his wife. A report of a current character investigation is to be made a part of the record and the case returned to the Board of Immigration Appeals for final decision. An appropriate order will be entered.

**Order:** It is directed that the case be remanded to the special inquiry officer for a reopened hearing in accordance with the foregoing opinion.